*JOHN A. LILLY, et als., v. C. W. WOOLEY, Administrator, et als.

*Administrators—Heirs—Real and Personal Assets.*

1. The personal assets of a decedent are first applicable to the payment of his debts, and only such debts as are left unpaid after exhausting the personal assets, can be satisfied out of his real estate.

2. If the personal assets are wasted or misapplied by the administrator or executor, and he should be removed, the administrator *de bonis non* must exhaust the administration bond, or the estate of the executor, before he can proceed against the land in the hands of the heir or devisee.

---

*ASHE, J., having been of counsel, did not sit on the hearing of this case.

3. Where the personal estate is insufficient, or when it consists of slaves, which after being delivered to the next-of-kin, were lost by the *vis major* of war, the land becomes liable for the debts, and payment may be enforced against any tract, leaving those whose property may be taken, to obtain contribution from the other heirs or devisees, according to the respective value of the lands held by them.

4. The rule which puts the personal in front of the real estate in the payment of debts, has reference to cases where both are in the jurisdiction of the Court.

5. So, where an administrator had paid the entire personalty over to the next-of-kin, before paying all of the debts, and he and the sureties on his administration bond were insolvent, except one surety, who was a non-resident, creditors can subject the land in the hands of the heirs, before they have exhausted the non-resident surety, and it is immaterial that such surety frequently returns to this State on visits.

(*Bland* v. *Hartsoe*, 65 N. C., 204; *Latham* v. *Bell*, 69 N. C., 135; *Carleton* v. *Byers*, 70 N. C., 691; *Hinton* v. *Whitehurst*, 71 N. C.. 66, cited and approved).

CIVIL ACTION, in the nature of a creditor's bill, tried before *MacRae, Judge,* at Spring Term, 1884, of the Superior Court of MONTGOMERY county.

This is an action, in the nature of a creditor's bill under the former practice, was commenced on August 11, 1877, and is prosecuted to subject the personal estate of the intestate, William P. McRae, in the hands of the defendant C. W. Wooley, his administrator, if sufficient can be found, and if not, the lands descended to the heirs-at-law, who are also defendants, to the extent of an ascertained deficiency, to the payment of his debts. The complaint alleges that payments had been made by the administrator out of the personal estate, to the distributees, which ought to have been applied to the liabilities of the intestate, that ought by these, to be now accounted for to the creditors. Upon the coming in of the answers, an order of reference was entered, without prejudice, to the Clerk, with directions to state the administration of the defendant Wooley, and to ascertain and report the payments made by him, on the distributive shares of the defendants. The report was accordingly made, and at Spring Term, 1883, John A. Lilly, the creditor who began and prosecutes the action, filed a single exception, which was sustained, and the indebtedness shown in the transcript from Mont-

gomery Superior Court, declared to be subsisting and in force against the intestate's estate. At Spring Term of the following year, the administrator filed exceptions also, and it was agreed that the issues arising upon the pleadings, should be passed on by the presiding Judge, instead of a jury. Thereupon the Court found the facts, and made rulings of law thereon as follows:

"I. That on the 11th of August, 1877, the defendant C. W. Wooley, and all the sureties upon his bond, as administrator of the estate of W. P. McRae, deceased, were insolvent, except Wilborn Lassiter, and that said Lassiter had converted his property into money, and removed to the State of Florida, but frequently returned to North Carolina on visits; that he was not insolvent, though a debt could not be collected out of him by the ordinary process of execution, but that he always had money.

"And upon the foregoing facts found, it is considered that the said Lassiter being solvent and frequently in this State, said bond was not insolvent. Plaintiff excepts.

"II. That this action is not barred by the statute of limitations:

"1. As to the administrator, because he had not paid over all the assets to the distributees, the referee having found a balance still in his hands. Due advertisement was made by the administrator for claims against said estate.

"2. As to the distributees, because they cannot set up the statute, unless the administrator can do so.

"Defendants except.

"It is admitted that the guardian has not obtained judgment against the administrator, as alleged.

"And it is therefore considered and adjudged that the plaintiffs have judgment against defendant C. W. Wooley, for the amount of their claims as reported by the referee, and that the other defendants go without day."

From which judgment the plaintiffs appeal to the Supreme Court.

*Mr. John Devereux, Jr.,* (*Mr. Jos. B. Batchelor* was with him,) for the plaintiffs.

No counsel for the defendants.

SMITH, C. J. (after stating the facts). It is a well understood rule in the administration of the estate of a deceased debtor, that his personal property must be first applied and exhausted, and the residue only of unpaid liabilities, can be satisfied out of his real property. If the representative into whose hands the personal effects come, make a distribution among the legatees or next of kin, he is personally answerable therefor to the creditors. *Bland* v. *Hartsoe,* 65 N. C., 204.

If the assets are wasted or misapplied, and the representative removed for misconduct, his successor, administering *de bonis non,* must sue on the administration bond and collect the amount of the *devastavit,* if the sureties are solvent, before he can proceed against the devised or descended lands. *Latham* v. *Bell,* 69 N. C., 135. And his application for license to sell the decedent's lands will be refused, if the money so misapplied can be replaced by an action against the former representative, and his official sureties. *Carleton* v *Byers,* 70 N. C., 691.

When there is no personal estate, or it is insufficient to pay the debts of the decedent, or when consisting in slaves, it is lost by the *vis major* of war, without default of the representative or of the legatee or next of kin, to whom they have been delivered, the land becomes chargeable with the debts, and may be sold for their payment. *Hinton* v *Whitehurst,* 71 N. C., 66, and payment may be enforced against any tract for the satisfaction of the indebtedness, leaving those, whose property may be taken, to obtain contribution according to the respective values of the other lands held by devisees or heirs.

In the present case, the obligors executing the administration bond, except one, are insolvent, and he, though possessed of property in another State, has none in this, and has become, since he executed the bond, a resident in Florida, and not accessible

to process issuing from a home court. The Court ruled that this fact was a bar to any remedy against the debtor's real estate, until the remedy against the solvent surety has been exhausted. No decided case or authority has been adduced to sustain the ruling, and the proposition does not command our approval. We do not understand the law to be, under the adjudications of the Courts, that the creditor here residing, must pursue his remedy upon the administration bond, against a surety to it in a distant State, and exhaust this source, before he can resort to the debtor's real estate, found in this State. The rule which puts the personal in front of the real estate, in payment of debts, has reference to cases where both are within the jurisdiction of the Courts, and can be reached by process, and not to cases where only the latter can be thus subjected. The policy of the law, looks to the payment of debts due to home creditors, out of such property, whether real or personal, of the non-resident debtor, within the limits of the State, as is under jurisdictional control, and capable of being thus marshalled. It would be unreasonable, when the means of enforced payment, out of the debtor's lands, are here furnished, to force resident or other creditors, to follow the person and property of a surety, liable, not in person for the debt, but a guarantor of the fidelity of a principal, who has wasted or misapplied trust funds in his hands. The requirement that the personal property of the deceased must be first applied, or redress sought upon the bond given for its proper administration, and representing it, cannot, upon any just principle, be extended to a case where these resources are not accessible to the process of the Court.

The difficulties arising from permanent absence of both person and property, (for we do not attach importance to the fact that he frequently visits the State), are scarcely less formidable in the way of coercing payment, than insolvency itself. When the Courts of the State can give its creditors redress upon property here, it will not drive them to seek it in a foreign tribunal. This is the policy which underlies our attachment laws.

It was error, therefore, to refuse judgment against the heirs-at-law, subjecting the land fund to the payment of what could not be made out of the personal estate, and the ruling in this regard must be reversed. As the cause can be proceeded with to greater advantage and convenience in the Court below, it is remanded. Let this be certified.

Error.                                    Reversed and Remanded.